UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GERRY K., <br><br> Plaintiff, <br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:23-cv-05104-TLF <br><br> ORDER REVERSING AND REMANDING |

## I.   BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). For the reasons discussed herein, the Court reverses and remands for a determination of the onset date. For DIB, the claimant must establish the onset date is prior to the last insured date. 42 U.S.C. § 423(a)(1), (c)(2), (d)(1)(A); *Armstrong v. Comm'r of Social Sec. Admin,* 160 F.3d 587, 589 (9th Cir. 1998). For SSI claims, the claimant is eligible when they become disabled, but they are not allowed to receive benefits for any period before their application date. *Wellington v. Berryhill,* 878 F.3d 867, 872 (9th Cir. 2017).

This is the third time this case has been appealed to the District Court. The first appeal was decided by the Hon. James P. Donohue (ret.), when the parties agreed the ALJ erred, and the case was remanded by stipulation on December 11, 2018, for further

proceedings. U.S. District Court for the Western District of Washington, Case No. 3:18-cv-5302-JPD, Dkt. 25.

The second appeal was decided by the Hon. S. Kate Vaughan; Judge Vaughan reversed and remanded for further proceedings on August 31, 2021. U.S. District Court for the Western District of Washington, Case No. 3:20-cv-06012-SKV, Dkt. 31. Judge Vaughan found that the ALJ properly found plaintiff's statements about symptoms and limitations to be not credible, and properly discounted the opinion of Dr. Platter. *Id.* at 6. And Judge Vaughan determined the 2016 opinion of Dr. James was properly discounted by the ALJ. But Judge Vaughan remanded for consideration of the 2014 opinion of Dr. James because the ALJ's reasons were insufficient. *Id. at* 7-9. And Judge Vaughan remanded for consideration of the report of Dr. Jenkins-Guarnieri, Ph.D., because the ALJ did not consider that opinion at all. *Id.* at 9.

In the current case, after the remand hearing, plaintiff was found by the ALJ to be not disabled on November 29, 2022. AR 1859-1860. Plaintiff filed a complaint with this Court and challenges that decision of the ALJ.

## II.   DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court

must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

In this case, the ALJ found plaintiff alleged an onset date of November 15, 2009, AR 1840, and plaintiff's date last insured, for SSDI, was March 31, 2015. AR 1843.

The ALJ found (at step two of the five-step analysis) that plaintiff had the following severe impairments: degenerative disc disease of the spine, headaches, and rheumatoid arthritis; the ALJ also found plaintiff's severe mental health conditions were: affective disorder, post-traumatic stress disorder (PTSD), and anxiety disorder. AR 1843. The ALJ found (at steps three and four) plaintiff's conditions and limitations do not meet the criterial of any listed impairments, and that plaintiff was unable to perform the duties of his past work. AR 1844.

The plaintiff's residual functional capacity (RFC) was described by the ALJ as: "perform light work . . . except he can never climb ladders, ropes, or scaffolds; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl." AR 1847. The ALJ also found plaintiff had the RFC to: "occasionally reach overhead with the bilateral upper extremities and frequently reach in all other directions; and frequently handle and finger with the left upper extremity." *Id.*

Regarding mental health conditions, the ALJ found plaintiff had the RFC to: "perform simple, work-related instructions, tasks, and decisions in a predictable work setting with only occasional changes. He can tolerate occasional interaction with the public and co-

3

workers. He would be off task for 10 percent of the workday secondary to his impairments." *Id.*

The ALJ determined (at step five) that plaintiff was not disabled, because there were jobs plaintiff would be capable of performing: Mail Room Clerk; Routing Clerk; and Photocopy Document Specialist. AR 1859. All three of these jobs are classified as light work[1] and unskilled[2], with an SVP of 2. *Id.*

**A. Medical evidence – issues presented**

a. Whether the ALJ properly determined plaintiff was not disabled regarding conditions of degenerative disc disease of the spine, under the Medical Vocational Guidelines grids, as of October 1, 2020.

b. Whether the ALJ properly determined plaintiff was not disabled regarding work-related limitations from physical conditions and symptoms.

c. Whether the ALJ properly determined plaintiff was not disabled regarding work-related limitations from mental health conditions and symptoms.

---

[1] "Light work" "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factor such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[2] "Unskilled work" is work that "needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and off bearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."

1. **Medical evidence – analysis of issues regarding physical conditions**

a. Whether the ALJ properly determined plaintiff was not disabled regarding conditions of degenerative disc disease of the spine, under the Medical Vocational Guidelines grids, as of his 50th birthday.

Plaintiff asserts that the Commissioner should determine he is disabled, under the Medical Vocational Guidelines (grids) as of October 1, 2020. Dkt. 13, plaintiff's opening brief, at 5.

The defendant contends that the ALJ properly discounted the opinion of Dr. Brent Packer, and therefore the plaintiff was properly found to have been capable of a reduced range of light work. Dkt. 25, defendant's brief, at 6.

If a claimant cannot perform past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). *See Tackett*, 180 F.3d at 1099, 1100-1101.

The Grids "are a matrix system for handling claims that involve substantially uniform levels of impairment" and may be used if they "*completely and accurately* represent a claimant's limitations." *Tackett*, 180 F.3d at 1101 (emphasis in original).

In applying the Grid Rules, an ALJ considers the claimant's age as one of the relevant vocational factors. 20 C.F.R. § 404.1563(a). A claimant can be classified in one of three categories: (1) younger person (ages 18-49), (2) a person closely approaching advanced age (ages 50-54), or (3) a person of advanced age (age 55 or older). 20 C.F.R. Pt. 404, Subpt. P, App.2; *see generally, Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983) (discussing creation and purpose of the grid rules). 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.12; *see also,* 20 C.F.R. § 404.1569.

Dr. Brent Packer, MD, provided a review of medical evidence on September 25, 2020. AR 3314-3331. Dr. Packer found "L5-S1 DDD has progressed from 7/17/2019, with a new L foraminal disc protrusion that contacts the left S1 nerve root." AR 3330. Dr. Packer found the MRI finding of left S1 nerve root contact by the L5-S1 disc protrusion was an explanation for plaintiff's increasingly painful back. *Id.*  Dr. Packer rated this condition at level 5 severity and found that plaintiff was limited to sedentary[3] work. AR 3315, 3330. Dr. Packer also noted plaintiff could stand or walk (at most) for two hours and would have a marked limitation with respect to ability to maintain attendance in the workplace. AR 3330.

Although the wedge fracture was found to be "stable", Dr. Packer rated it a level 4 severity. AR 3330.

Plaintiff filed their application[s] prior to March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to

---

[3] According to 20 C.F.R. § 404.1567(a), "sedentary work" is work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

6

1 reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d
2 821, 830-31 (9th Cir. 1995) (superseded by regulation, as stated in *Farlow v. Kijakazi,*
3 53 F.4th 485, 488 (9th Cir. 2022). When a treating or examining physician's opinion is
4 contradicted, the opinion can be rejected "for specific and legitimate reasons that are
5 supported by substantial evidence in the record." *Lester,* at 831 (citing *Andrews v.*
6 *Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th
7 Cir. 1983)).

8 An examining physician's opinion is "entitled to greater weight than the opinion of
9 a non-examining physician." *Lester v. Chater*, at 830 (citations omitted); *see also* 20
10 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source
11 who has examined you than to the opinion of a source who has not examined you"). A
12 non-examining physician's or psychologist's opinion may not constitute substantial
13 evidence by itself sufficient to justify the rejection of an opinion by an examining
14 physician or psychologist. *Lester,* 81 at 831 (citations omitted). However, "it may
15 constitute substantial evidence when it is consistent with other independent evidence in
16 the record."

17 The ALJ reviewed the 2019 and 2020 MRI reports, and evidence from Dr. Packer
18 (see, discussion in ALJ's decision at AR 1849, 1854-1855), but did not consider the
19 change in circumstances evident from the 2020 MRI evidence. AR 3328-3331 (9-23-
20 2020 MRI Report of Dr. Fink, and 9-27-2020 Report of Dr. Packer). For example, the
21 ALJ mentions the 2020 MRI results, but failed to mention the nerve root impingement.
22 AR 1849 ("A . . . MRI . . . of the lumbar spine in September 2020 showed some
23 progression of the degenerative disc disease with interval left subarticular, stable

wedging at T12, and foraminal zone protrusion (B38F/55; B42F/215)"). The ALJ overlooked this important change that was noted by Dr. Packer as being significant. AR 3330 ("recommend '5' severity for the new MRI finding of left S1 nerve root contact by L5-S1 disc protrusion. This finding would explain the patient's deteriorating spine symptoms.").

Harmless error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id* at 1052, 1054; *see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

In this case, there are no conflicting assessments concerning limitations connected with the plaintiff's lumbar spine disc disease that are contemporaneous with, or post-date Dr. Packer's September 2020 opinion. The ALJ simply mentions "some progression" of degenerative disc disease and does not say anything about nerve root contact. AR 1849.

With no skills identified, and with a sedentary work limitation, plaintiff would be disabled as of his 50th birthday, according to 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.12. Therefore, the ALJ harmfully erred. Plaintiff would necessarily be considered disabled as of his 50th birthday, which was October 15, 2020.

1      b. Whether the ALJ erred with respect to evaluating Dr. Packer's, Dr. Gregory's,

2         and Dr. James' medical opinion evidence, for the entire relevant period beginning

3         with the date of alleged onset, regarding work-related limitations from physical

4         conditions and symptoms.

Plaintiff contends Dr. Casey Gregory's February 18, 2022, opinion was improperly discounted by the ALJ. The defendant asserts that the ALJ properly discredited these opinions because they were unsupported by the objective medical findings, and because plaintiff's daily activities showed he had greater abilities than opined by these treating physicians.

Dr. Gregory was plaintiff's primary care physician; Dr. Gregory opined that between July 2012 and February 2022, plaintiff had work-related limitations because of back pain, anxiety, mood disorder, and PTSD. AR 3338-3341. According to Dr. Gregory's report, plaintiff would be absent from work five days each month due to pain; he would be off-task 30% of the work day; plaintiff would be unable to reach or stoop; he would be required to walk around every 15 minutes for five minutes each time; plaintiff would need to have five unscheduled breaks lasting 15 minutes each, during every work day – and plaintiff would be required to alternate between sitting and standing at-will. AR 3339-3340.

In addition, plaintiff challenges the ALJ's evaluation of two medical opinions from Dr. Wilbert James, dated 3-13-2014 and 7-7-2014. AR 482-484, 487-489. Dr. James found, in the March 13 evaluation, that plaintiff experienced "neck pain going down right arm unable to use right arm", and "back pain right middle and low back pain exacerbated with standing or sitting in car seat for extended period of time". AR 482. Dr. James

stated this painful condition had been present for "many years". *Id.* According to Dr. James' opinion, the severity rating of the diagnosis was the highest – 5 out of 5; and plaintiff would be unable to meet the demands of sedentary work. AR 483, 484. Dr. James stated that plaintiff's treatment had been medication, but recommended neurosurgery and physical therapy in the future. AR 483-484.

In the July evaluation, Dr. James provided information about plaintiff's June 18, 2014, surgical procedure, "lamenectromy/foraminectromy/discectomy for cervical stenosis . . .." and stated the onset date was five years before the date of this report. AR 487. Dr. James again rated plaintiff's condition as the most severe: 5/5. AR 488. Plaintiff was experiencing continued pain and loss of sensation in his right hand. *Id.* Dr. James opined that plaintiff would be unable to meet the demands of sedentary wok and the limitations would remain for at least 12 months. AR 489.

In this case, the ALJ did not provide "clear and convincing" reasons to reject the uncontradicted opinions of Dr. James or Dr. Gregory, and, to the extent Dr. James' or Dr. Gregory's opinions were contradicted, the ALJ failed to identify "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Dr. James', and Dr. Gregory's assessments, both of whom were treating physicians and saw plaintiff regularly during the relevant time, are consistent with the

longitudinal medical record. Dr. Platter – a reviewing physician -- was the only physician who, in some respects, contradicted their opinions. AR 171-184, 191-210 (opinions of Dr. Platter dated 3-12-2015).

  Dr. James had found plaintiff was experiencing C5-6 canal narrowing and symptoms such as neck pain, and inability to use right arm. AR 446, 482. Dr. Sanford Wright performed surgery on plaintiff's cervical spine on June 18, 2014, based on a referral from Dr. James. AR 472. Even after surgery, the record shows that plaintiff's neck/back pain continued. *See e.g.,* AR 537-539 (nerve root steroid injection procedure, November 2014); AR 548-550, 674 (additional cervical spine surgery to remove lipoma growth); AR 1491- 1498 (plaintiff reports recurring neck pain, mid-cervical region and moderate to severe; report by Dr. Chapman 8-8-2018, and Dr. McGovern 8-14-2018; cervical spine degenerative changes are diagnosed, and compared, 2016-2018); AR 1499-1500 (another nerve root steroid injection on 8-28-2017 for plaintiff's neck pain and radiculopathy).

  The ALJ rejected these opinions based on inconsistency with the medical record, yet the medical record fully supports Dr. James' and Dr. Gregory's assessments (as discussed above with respect to Dr. Packer's report). The ALJ also referred to plaintiff's statements about his activities, but the record shows plaintiff was not engaging in anything but the simplest chores and light activities that are not contradictory with the severity of limitations assessed by Dr. James and Dr. Gregory. Plaintiff's ability to walk his dog, play a game on a computer, or perform some household chores to help elderly family members, was neither a clear and convincing, nor specific and legitimate, reason to reject the opinions of Dr. James and Dr. Gregory.

The error is not harmless. The RFC did not include limitations consistent with Dr. James' and Dr. Gregory's opinions. AR 1847.

### 2. **Whether the ALJ erred in evaluating the evidence concerning plaintiff's mental health conditions.**

Plaintiff argues the ALJ erred by rejecting the medical opinions of Dr. Tapper (2022 and 2014) and Dr. Guarnieri.  The defendant contends that the ALJ properly discounted these medical opinions because the opinions were out of step with the longitudinal medical record, and because plaintiff's daily activities showed that he had fewer work-related limitations than these doctors opined.

Dr. Bruce Tapper, Ph.D., conducted a mental status examination and evaluated plaintiff on January 26, 2022. AR 3306-3311. Dr. Tapper found plaintiff had PTSD and Persistent Depressive Disorder. AR 3308. Dr. Tapper stated that plaintiff was experiencing symptoms such as episodes of angry acting out or panic attacks, and opined plaintiff was severely limited with respect to the following workplace activities: "[u]nderstand, remember, and persist in tasks by following detailed instructions"; "[a]sk simple questions or request assistance"; "[c]ommunicate and perform effectively in a work setting"; and "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms". AR 3307-3308.

Dr. Tapper also determined plaintiff would have marked limitations with respect to the following workplace activities: "[u]nderstand, remember, and persist in tasks by following very short and simple instructions"; "[a]dapt to changes in a routine work

setting"; "[m]ake simple work-related decisions"; [s]et realistic goals and plan independently". AR 3308.

Dr. Tapper stated plaintiff had paranoia, feared for his safety, and thought he was being watched in his room at night. According to Dr. Tapper's findings, plaintiff was severely depressed, has no social contacts, did not leave his stepfather's home unless he was required to, for example to purchase his stepfather's medications, and had episodes where he experienced nightmares of abuse and violence, and had flashbacks and panic attacks. AR 3307-3310. He opined that plaintiff's impairments would persist for 12 months or more, with available treatment. AR 3309.

According to Dr. Tapper's report dated May 6, 2014 (AR 1541-1545), he conducted a mental status examination and diagnosed plaintiff with social phobia, generalized, early onset dysthymic disorder, generalized anxiety disorder, and alcohol dependence by history but in remission. AR 1542. Dr. Tapper stated plaintiff experienced peripheral hallucinations, noticing movement to the side that would disappear whenever he turned to face that direction. AR 1544. He stated that plaintiff's symptoms included, "[s]adness, worry, restless sleep, concentration problems, fatigue, loss of self-confidence, feelings of not fitting in impair his ability to work around others, [t]ension, racing thoughts, fearfulness and appeared his concentration and persistence in activities". AR 1542.

Dr. Tapper opined plaintiff was severely limited with respect to the following workplace activities: "[u]nderstand, remember, and persist in tasks by following detailed instructions"; "[c]ommunicate and perform effectively in a work setting"; and "[c]omplete

a normal work day and work week without interruptions from psychologically based symptoms". AR 1543.

He also determined plaintiff would have marked limitations with respect to the following workplace activities: "[a]dapt to changes in a routine work setting"; "[a]sk simple questions or request assistance"; "[m]aintain appropriate behavior in a work setting". AR 1543. Dr. Tapper found plaintiff's impairments would be likely to last at least 12 months with available treatment. AR 1543.

Dr. Michael Jenkins-Guarnieri was a reviewing doctor who reviewed plaintiff's medical records on May 31 (AR 1539-1540) and July 31, 2019 (AR 1558-1560); he reported on May 31, 2019, that plaintiff's mental health impairments were rated "4" overall, and his functional symptoms of anxiety were rated "5" on a five-point scale -- with generalized anxiety disorder being the primary diagnosis, and major depressive disorder an additional diagnosis. AR 1540.

Dr. Jenkins-Guarnieri opined that plaintiff had mental health limitations rated "severe" that included the following workplace activities: "[u]nderstand, remember, and persist in tasks by following detailed instructions"; "[c]ommunicate and perform effectively in a work setting"; and "[m]aintain appropriate behavior in a work setting". AR 1539.

Dr. Jenkins-Guarnieri also found plaintiff had the following mental health limitations rated "marked": "[a]dapt to changes in a routine work setting"; "[a]sk simple questions or request assistance"; and "[c]omplete a normal work day and work week without interruptions from psychologically based symptoms". AR 1539.

In the July 2019 assessment, Dr. Jenkins-Guarnieri opined that he was concerned plaintiff's most recent testing was in 2014 yet it was reasonable to defer to the assessments of the evaluating clinicians; and that the duration of plaintiff's impairments would likely be nine months. AR 1558-1559. He estimated that the alleged date of onset for his mental health impairments (May 6, 2014) was accurate. AR 1559.

The ALJ's decision gave partial weight to Dr. Tapper's and Dr. Jenkins-Guarnieri's opinions. AR 1854. The ALJ determined that the medical record did not support the marked or severe limitations, and that plaintiff's activity level was inconsistent with the marked or severe ratings. *Id.*

The ALJ's decision that plaintiff was not disabled between the alleged date of onset (November 15, 2009) and the date of Dr. Tapper's first evaluation (May 6, 2014) is supported by substantial evidence, and by clear and convincing reasons. As Dr. Jenkins-Guarnieri pointed out, before May 2014, there was not a robust set of data points. AR 1559. Dr. Jenkins-Guarnieri found sufficient evidence in the medical records to support the evaluations by Dr. Tapper, however, and the ALJ's analysis does not address any of the limitations associated with paranoia, flashbacks, or panic attacks, described by plaintiff and Dr. Tapper. AR 1849-1850, 1853-1854. The facts pointed to by the ALJ, such as "normal mood and affect" or "well groomed", do not undermine Dr. Tapper's assessments. See Dkt. 25, defendant's brief, at 3. And, with respect to plaintiff's activities at home, his playing video games, taking care of some chores for elderly family members, and participating in an art hobby, would not be inconsistent with the opinions of Dr. Tapper and Dr. Jenkins-Guarnieri, as to plaintiff's work-related limitations concerning paranoia, flashbacks, or panic attacks.

Therefore, the Court upholds the ALJ's decision regarding mental health impairments between alleged date of onset (November 15, 2009) and the date of Dr. Tapper's first evaluation (May 6, 2014). The Court finds the ALJ harmfully erred with respect to the period starting May 6, 2014. There is no ambiguity in the record starting May 6, 2014, and neither the hypothetical questions to the V.E., nor the RFC, included mental health impairments or limitations that would be consistent with Dr. Tapper's assessments.

### B. Plaintiff's statements regarding subjective symptoms

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."

1 | *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639,
2 | 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).
3 | Treatment records cannot be cherry-picked; the ALJ must consider a particular record
4 | of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.
5 |      An ALJ may discount a claimant's testimony based on daily activities that either
6 | contradict their testimony or that meet the threshold for transferable work skills. *Orn v.*
7 | *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).
8 |      As the defendant points out, Judge Vaughan previously upheld the ALJ's
9 | decision regarding the reliability of plaintiff's statements about symptoms and
10 | limitations. Dkt. 25, defendant's brief, at 1-2; U.S. District Court for the Western District
11 | of Washington, Case No. 3:20-cv-06012-SKV, Dkt. 31.
12 |      Plaintiff argues that law of the case doctrine should not be applied, because the
13 | Court is considering additional facts that were not in the record at the time of the Court's
14 | decision in 2021. Dkt. 26, plaintiff's reply brief, at 5.
15 |      Under *Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir. 2016), the court has discretion
16 | to apply law of the case doctrine and decline to review a decision of the same court in a
17 | prior round of review. The law of the case doctrine should not be applied when
18 | "evidence on remand is substantially different, when the controlling law has changed, or
19 | when applying the doctrine would be unjust." *Id.*
20 |      There is new evidence in the record, and this Court will therefore not apply law of
21 | the case.
22 |      As plaintiff points out, the symptoms and daily activities described by plaintiff (AR
23 | 1881-1889) are consistent within the limitations delineated in the physicians' reports

17

concerning his back pain. See e.g., AR 439 (6-18-2014, notes by Dr. Wright, indicating plaintiff had neck, shoulder, arm pain with radicular features);  AR 433, 452-454 (9-26-2013 and 3-31-2014 notes by Dr. Wilbert that plaintiff is likely to have chronic pain that would not likely be fixed, and noting "significant stenosis"); AR 1642 (4-20-2016 and 8-28-2017 physicians' notes regarding steroid injections for back pain and radiculopathy); AR 2579 (severe right foraminal stenosis diagnosed on 3-22-2014). Plaintiff stated that he mainly stayed at his stepfather's home, was able to accomplish only light chores and playing with his dog in short bursts of activity with rest periods that would not be analogous to full-time workplace demands. AR 1881-1883.

1. **Whether the Court should reverse with a direction to award benefits.**

"'The decision whether to remand a case for additional evidence, or simply to award benefits [,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. The Court has found several errors in the ALJ's evaluation of the medical opinion evidence. Providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

There is no ambiguity in the record as to whether plaintiff meets the criteria for disability.

If the opinions of Drs. James and Gregory were credited as true, particularly Dr. Gregory's opinion that plaintiff would be absent five days of work per month, the ALJ would be required to find plaintiff disabled on remand, so there is no reason for another hearing on the issue of whether plaintiff meets the criteria for disability. AR 613–14, 984; *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits."). The Court notes, though, that the date of onset

is not clear from the record. The earliest opinion of a physician showing plaintiff's limitations due to spinal conditions appears to be March 13, 2014. AR 482-484, Dr. James' opinion. The Commissioner, rather than the Court, would be in the best position to clarify the date of onset on remand. *See, Wellington v. Berryhill,* 878 F.3d 867, 872 (9th Cir. 2017); *Diedrich v. Berryhill,* 874 F.3d 634, 638 (9th Cir. 2017).

Accordingly, remand for additional proceedings to determine the date of onset is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for additional proceedings to determine date of onset.

Dated this 4th day of January, 2024.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge